## A. A. SHATTUCK VS. THE STATE.

1. CRIMINAL LAW: *Escape from custody of sheriff.*

Wherever an escape is shown, the law implies negligence on the part of the sheriff, into whose custody the prisoner has been placed, and it is not necessary for the state to prove negligence to procure conviction. When the escape has been shown to the satisfaction of the jury, they should find the sheriff guilty, unless he shows that such escape was caused by the act of God, or other irresistible adverse force, for this defense alone can avail the sheriff in such cases. The insecurity of the jail constitutes no defense.

2. SAME: *Duty of sheriff; safekeeping of prisoners.*

The sheriff is required to safely keep all prisoners, lawfully committed, according to the *mittimus* or order of committal. Rev. Code 1871, § 881. In case the jail, in the opinion of the sheriff, is insufficient for the safety of prisoners, he may summon guards to secure them or protect the jail as long as the same may be necessary. Rev. Code 1871, § 2850. If the jail needs repairs, it is his duty to report it to the proper authorities, or in an emergency, to have the repairs done on his own order. Rev. Code 1871, § 240.

3. SAME: *Penalty for escape; sec. 26, art. 6, const.*

Under this section of the constitution, the penalty for willful neglect of duty or misdemeanor in office is mandatory and peremptory, and upon conviction there is no discretion in the court as to the sentence.

ERROR to the Circuit Court of *Colfax* County.

Hon. J. A. ORR, Judge.

The facts in this case sufficiently appear in the opinion of the court.

The following errors are assigned:

1. That he was not tried by due proces of law, or in due course of law; that he was arrested whilst on bail, and kept in custody and confinement as a prisoner during the trial, by an order of the court.

2. That he was removed from office, and the coroner inducted in the office of sheriff before trial or conviction, and by a mere order of the court.

3. That the jury was not a lawful or ordinary one, but a special one to try the defendant in the court below, the plaintiff in error; that the jury were not legally summoned, elected or impaneled.

4. That the jury were not legally sworn.

5. That the said A. A. Shattuck was not legally convicted.

6. That the sentence was not a lawful one, but was for an alleged offense, for which the prisoner was not tried, and which alleged offense is unknown to the law, and the penalty or punishment exceeded the limits of the law in removing him, said A. A. Shattuck, from the office of sheriff.

7. That the court erred in admitting evidence on the part of the state that was excepted to.

8. That the court erred in excluding and rejecting the defense set up, and the evidence offered on the part of the defense.

9. That the court erred as to the law in the charges and instructions given to the jury.

10. The court erred in overruling the motion for a new trial.

11. That the jury decided contrary to the law, and contrary to the evidence.

*James T. Harrison* and *Meek & Sims*, for plaintiff in error:

It was error to remove the sheriff before trial, and to appoint the coroner by a mere "order" of the court. The sheriff was about to be arraigned; the coroner had nothing to do with the arraignment, nor could he execute a writ unless it was directed to him. Arnold & Jemison *v.* Wynn, 26 Miss., 338. A writ must be specially directed to the coroner. Carlisle *v.* Weston, 21 Pick., 536; Case *v.* Humphrey, 6 Conn., 139; 11 Mass., 273; 2 Johns.,

190; 5 Mass., 362; 3 East, 155; 8 id., 547. The statute provides that when the sheriff shall be committed to jail, the coroner shall be keeper of the jail, etc. Rev. Code 1871, § 260, p. 68. The opinion of the court below as to escapes, closes out all defense. The whole of the testimony offered by the defense was excluded. The court below held that it was incompetent for the defendant to prove that the jail turned out to be insecure, although so constructed as to be considered by persons of competent judgment to be perfectly secure, and that it had been accepted and approved by the board of supervisors and by the grand jury, etc., and that nothing would excuse except the act of God or other irresistible adverse force. We submit that such is not the law of Mississippi, and never was the law of England in criminal cases. In civil cases, when imprisonment for debt was in force in England and in the United States, such was the law in favor of creditors, and the reason was one of public policy. It is a relic of barbarism and tyranny. 2 Bac. Abr., title Escape in Civil Cases, p. 237. The difficulty in this case arises in not drawing the distinction between civil and criminal cases. In North Carolina, South Carolina, New York and other states, in civil cases (imprisonment for debt) the English rule was adhered to upon public policy; the same rule was applied that applies to common carriers. 24 Wend., 381, 383; 6 Searg. & Rawl., 390; 5 Gill & Johns., 406–410; 2 Murphy, 386; 6 Richardson (S. C.) Law Rep., 58. A negligent escape may be punished, at most, by fine and imprisonment at common law. 2 Hawkins, ch. 19, § 31; 2 Black, 130. One instance of negligent escape did not amount to a forfeiture of the jailor's office. 2 Hawkins, ch. 19, § 30. Yet it may if he suffers many such escapes. 2 Hawkins P. C., 198, § 30; 2 Waterman, Archb., 1080. Willfully does not mean the same thing as unlawfully. Starkie Cr. Pl., 86, 243, 249, 250; 1 Chitty C. L., 283; 2 Waterman, Archb., 798–801; 8 Blackf., 526; 7 Humph., 148–150; 3 Foster, 359; 11 Amer. Rep., 307; 26 Texas, 175. When the *scienter* is a part of the statutory description of the offense, it

should be so laid in the indictment. 1 Chitty Cr. L., 283; 4 Ohio, 386; 13 S. & M., 263; 23 Miss., 525; 31 id., 473; 28 id., 10; 42 id., 382; Code 1871, § 321, p. 80; Bish. Stat. Crime, §§ 132, 3576; 10 Mo., 135; 7 B. Mon., 247; 7 Humph., 148; 19 Rich., 304; 8 Wend., 629; 1 Cow., 502; Bish. Stat. Crime, § 133; 17 Wend., 351; 19 Rich., 179; 7 Metc., 462; 21 Rich., 515; 2 Mo., 23; Code 1871, § 2557; 1 Hale P. C., 604; 4 Comyn's Dig., 372; Smith's Stat. & Const. L., 747; 1 Payne's Rep., 32; Blackwell on Tax Titles, pp. 711–745.

*G. E. Harris*, Attorney General, for the state:

The accused was on recognizance during the trial. The sheriff was on trial. The court ordered the coroner to act in his stead. Rev. Code, 1871, § 257. The acts of the coroner were lawful. He could summon a jury. The sheriff could not summon a jury to try his own case. It would be a farce. The sentence was proper and the punishment not excessive. See Rev. Code, 1871, § 321. The evidence on the part of the state was properly admitted. It proved the committal of the prisoner and his escape from the county jail. The testimony offered by the accused was properly excluded by the court. He offered to prove that the jail was new; had been received and approved by the board of supervisors, examined and approved by the grand jury, and considered by men of competent judgment to be secure, when, in fact, it was not secure. He offered this and other proofs to rebut the presumption of negligence. This was excluded. The accused then asked an instruction on the subject, which was refused. The court below held that nothing would be an excuse except the act of God, or other irresistible adverse force. Mr. WHARTON lays down this rule. Whart. Cr. Law, § 2612. See, also, State *v.* Halford, 6 Rich. (S. C.), 58, in which case the court say: "The rule may, in some cases, operate hardly on the sheriff; but they are rare. Most frequently, an escape is favored by the negligence of the jailer. The vigilance of the jailer is indispensable to the safe keeping of prisoners. * * The sheriff is not a mere bailee. He exercises a public employment, and is charged with a duty in

the safe keeping of prisoners of vital importance to the govern-
ment.    The law is deprived of its efficacy, and the judgment of
the court is frustrated when a prisoner escapes.    *    *    It is suf-
ficient to exempt the rule from the imputation of harshness that
public necessity demands it." I quote freely, because the lan-
guage of the court embodies the correct rule of law on the subject,
and gives the reason of the rule. See, also, Smith *v.* Hart, Sheriff,
2 Bay, 395; Saxon *v.* Boyce, 1 Bailey, 67; Alsept *v.* Eyles, 2
H. Bl., 108 ; 2 Bish. Cr. Law, § 1096.

TARBELL, J., delivered the opinion of the court.

The plaintiff in error, sheriff of the county of Colfax, was in-
dicted for "unlawfully and negligently" suffering and permitting
a prisoner to escape from his custody.    The indictment set out in
detail a complaint on oath against the said prisoner, charging
him with larceny; the warrant and arrest by the sheriff; the ex-
amination before the magistrate; his commitment; the mittimus,
or warrant, and the confinement in jail.    There was a motion to
quash the indictment.    1. Because the indictment does not fur-
nish that full, clear and perfect statement of the cause of accusa-
tion to which the defendant is entitled under the constitution;
and 2. Because upon its face the indictment shows that there was
no sufficient cause to justify the finding of said bill."    This mo-
tion was overruled.    There was also a general demurrer to the
indictment, which was also overruled.

During the reading of the indictment, and when it appeared
that the accused was sheriff of the county, the court ordered the
coroner of the county to be sworn to act as sheriff during the trial,
and until the return of the sheriff to duty by operation of law.
Whereupon, the coroner was sworn as sheriff, and at once as-
sumed the duties of the office.

The plaintiff in error standing mute after the reading of the
indictment, a plea of not guilty was entered for him.    Thereupon,
the court directed the coroner to summon a special jury, which
was done.

On the trial, the accused offered evidence to show that the escape occurred by defects in the jail; that the jail was new, and supposed to be strong and safe; that it had been accepted and approved by the board of supervisors, and, in fact, that the escape was effected by a combined effort on the part of prisoners in jail, using force on the jail, by which they broke out, but that they used no force on the sheriff. This evidence was rejected by the court. In the charges to the jury, these views were declared, and were, doubtless, conclusive of the case: That wherever an escape is shown, the law implies negligence on the part of the sheriff into whose custody the prisoner has been placed, and it is not necessary for the state to prove negligence to procure a conviction; that when the escape has been shown to the satisfaction of the jury, of a prisoner in the custody of the sheriff, the jury should find him guilty unless he has shown, to their satisfaction, that such escape was caused by the act of God, or other irresistible adverse force, for this defense alone can avail the sheriff in such case; and that the insecurity of the jail constitutes no defense.

The verdict of the jury was as follows: "We, the jury, find the defendant guilty as charged in the bill of indictment, and respectfully recommend the clemency of the court to the defendant."

There was a motion for a new trial, stating fourteen reasons therefor. This motion was overruled. In this court, nine grounds of error are assigned. The points made in support of a new trial, and relied on for error, may be condensed in these, as presenting the material questions in the case: The suspension or removal of the sheriff pending the trial, and the installation of the coroner in the sheriff's office; the summoning of a special jury to try the sheriff; the rejection of evidence offered by the accused, show-ing the manner of the escape through defects in the construction of the jail; and the law of the case as declared by the court, to wit: That the sheriff was without excuse, unless the escape was caused by the act of God, or other irresistible adverse force.

As to the suspension of the sheriff and the recognition of the

coroner:  Const., art. VI, sec. 26; Code, §§ 257, 260, 314, 881;
giving express authority in a case like this.

As to the special jury, Code, § 635.

As to removal from office on conviction, Const., art. VI, sec. 26;
Code, § 321.

So far, the court proceeded within the express provisions of
statute, and pursuing the authority thus conferred, the case, up
to this point, presents no serious difficulty.  The rule of law,
declared by the court, however, demands and has received the
most serious consideration.  As to this, it is believed, that the
key to its solution is found in Layer's case, *supra*, wherein the
court say, "As for requiring the irons to be removed from the
prisoner in the tower, the court would make no order, because,
if they did, it might be an excuse to his keeper, if he (the
prisoner) should escape; therefore, it must be left to his keeper's
discretion how to use his prisoner, especially since he had already
attempted to escape."  The adoption of the rule in this state,
that an escape may be excused by proof of a defective jail,
would result in a general jail delivery in every county therein.
It is scarcely possible to conceive of consequences more disas-
trous to society, than would follow such an adjudication or legis-
lation.  The statute, Code, § 881, requires sheriffs to " safely
keep all prisoners lawfully committed, according to the mittimus
or order of committal."  In case the jail, in the opinion of the
sheriff, is insufficient for the safety of prisoners, he may summon
guards to secure them or protect the jail, as long as the same
may be necessary.  Code, § 2850.  And if the jail needs repairs,
it is his duty to report it to the proper authorities, or, in an
emergency, to have the repairs done on his own order.  Code,
§ 240.  From the earliest times it has 'been the rule in England,
that for escapes, whether from arrests on civil or criminal process,
the sheriff would be heard to excuse himself only on the plea,
that the escape was by the act of God or the public enemy.
And in this country, the same doctrine is universally applied in
case of an escape from arrest on civil process.  Few, if any, cases

have occurred in the United States of prosecutions of sheriffs for the escape of persons in arrest on criminal process. A most thorough search has failed to find even a single instance of the kind. In most of the states, the subject is regulated by statutes, which usually inflict a fine for a negligent escape. Wharton, in his work on American Criminal Law, says: " The rule is the same in both civil and criminal cases." The subject is treated of in Bouvier's Institutes, § 2337 ; and the same view seems to be taken as in the American Criminal Law. At any rate, the rule is not denied or questioned. Allen on Sheriffs is to the same effect. Bishop, in his Criminal Practice, does not question it. In his Criminal Law, title, Escape, it is understood to be recognized. He says, § 1093: "The escape of a person arrested upon criminal process, whether effected with or without force, before he is discharged by due course of law, is punishable as an offense against public justice,    *    *    and it is a clear principle of law, that an indictment will lie, not only against the party who gives his liberty before he is legally discharged, but also against the officer by whose default, and from whose legal custody he has been suffered to escape." And in § 1096, he says : " So strongly does the law incline to presume negligence in the officer, where an escape occurs, that, though such prisoner should break jail, yet it seems that it will be deemed a negligent escape in the jailer ; because it will be attributed to a want of due vigilance in the jailer or his officers." Bouvier, in his Institutes, says : " A negligent escape takes place when the prisoner goes at large unlawfully, either because the building or prison in which he is confined is too weak to hold him, or because the keeper, by carelessness, lets him go out of prison. And nothing will excuse the jailer where an escape takes place, except the act of God or of the enemies of the country, or the authority of a court of competent jurisdiction."

In support of these rules numerous authorities are cited, but they are all of escapes from arrest in civil process. The reason and the reasoning seem to be the same in both cases. No

reason can apply to one which does not with equal force apply to the other. In one case the creditor is alone interested, but society is concerned in the other. The rule applied on the trial in this case is attacked as a barbarity. It is not obnoxious to such a criticism. On the contrary, it is founded on public policy, as much so as in the case of a common carrier, who is held to very stringent responsibilities. He is not only responsible for any loss of or injury to the goods he carries, which is caused by his negligence, but the law raises an absolute and conclusive presumption of negligence whenever the loss occurs from any other cause than the act of God or the public enemy. This rule is as ancient, at least, as the reign of Elizabeth, while the rule, as to escapes, is so old, "the memory of man runneth not to the contrary." The application of the rule in both cases rests on a wise public policy. The goods in the one case are entirely within the power of the carrier, and it would be so easy for him to conceal his fraud or misconduct, and so difficult for the owner to prove it, that the law does not permit the inquiry to be made, but supplies the want of it by a conclusive presumption. 2 Parsons on Contr., 158. If sheriffs were permitted to excuse escapes on the plea of defective jails, it would be equivalent to a judicial or legislative release of all responsibility for the safety of prisoners, especially in the present condition of our society. Combinations either with the boards of supervisors or others, and aid from outside, would be wholly unnecessary. To ensure escapes it would only be necessary for the sheriff and jailer to retire to rest and sleep at night. If, in the morning, their prisoners were found to be missing, they would only have to plead a defective jail, and thus would society be at the mercy of criminals, irresponsible officials and disorderly disposed persons.

Smith *v.* Hart, 2 Bay, 395, was an action of debt for an escape. The sheriff offered evidence of the insecurity of the jail; that he had made remonstrances to the governor on the subject; and that it had frequently been presented by the grand jury; but the evidence was excluded. On appeal, it was held to have been prop-

erly excluded; because, it was said, if testimony of this kind were once admitted, it would open a door to sheriffs and jailors for making excuses without end; for which reason the law is clear that it is no legal excuse.

In State v. Halford, 6 Rich., 58, it is said: "The rule may, in some cases, operate hardly on the sheriff; but they are rare. Most frequently an escape is favored by the negligence of the jailer. The walls and fastenings of the jail, however strong and solid they may be, are not of themselves sufficient to prevent escape. The vigilance of the jailer is indispensable to the safe keeping of the prisoners. The liability of the sheriff and of a common carrier respecting the subjects committed to their charge, rests on a common ground of public policy. The sheriff is not a mere bailee. He exercises a public employment, and is charged with a duty in the safe keeping of prisoners, of vital importance to government. The law is deprived of its efficacy, and the judgment of the court is frustrated, when a prisoner escapes. The good order of society and the security of private rights depend on the execution of the law. Pretexts and excuses for an escape are so easily invented and so easily maintained by evidence, that unless they are cut off, the sheriff may, in almost every case, secure to himself impunity. It is sufficient to exempt the rule from any imputation of harshness, that public necessity demands it."

Although the rule referred to is stringent, it is believed a just public sentiment can be relied on to exempt faithful and vigilant officers from malicious prosecutions and injustice. In the case at bar, the witnesses give the plaintiff in error a good character as an officer, and ascribe the escapes, which had been numerous and repeated, to an unfortunate selection of jailers. No vigilance on the part of the jailer was proposed to be shown. The case made by the party on trial for himself was a reliance on the jail for the security of his prisoners, and of a defective jail to exempt him from responsibility for their escape. Doubtless the jailer was asleep, altogether absent from the jail, or consenting to the escape. See further, Tidd's Pr., 308; Saxon v. Boyce, 1 Bailey, 66;

Cook *v.* Irving, 4 Strob., 204; and numerous cases in all the states.

If, in this case, the penalty is severe, the fault is in the constitution, art. VI, sec. 26, which is peremptory. In other states, a discretion is confided to the courts to fine or remove from office, according to the character or repetition of the offense. And this is doubtless more in accordance with justice. In this state, however, there is no discretion and no alternative. Const., art. VI, sec. 26; Code, § 321,

Judgment affirmed.